# IN THE UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF ARKANSAS
# HOT SPRINGS DIVISION

JOHNNY THORNTON                                                                    PLAINTIFF

v.                                    Case no.  6:07-cv-6058

TOMMY HARMON                                                                       DEFENDANT

## REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE

Johnny Thornton (Plaintiff) filed this *pro se* civil rights action under 42 U.S.C. § 1983 on August 3, 2007.  (Doc. 1).  Plaintiff's Complaint was filed *in forma pauperis* (IFP) and certified to proceed on that same date.  (Doc. 3).  On September 18, 2007, case number 6:07-cv-06070 was consolidated into the above-styled case.  (*See* Doc. 3 in case number 6:07-06070).  The undersigned held an evidentiary hearing on November 9, 2009 regarding Plaintiff's claims of denial of medical care.  Pursuant to the provisions of 28 U.S.C. § 636(b)(1) and (3), this case is referred to the undersigned by the Honorable Robert T. Dawson for the purpose of issuing a report and recommendation.  Accordingly, the Court issues this Report and Recommendation.

**I. Background and Witnesses Presented**

At the evidentiary hearing I heard testimony from the following witnesses in the following order: (1) Johnny Thornton, (2) Captain Melvin Steed, and (3) Nurse Tommy Harmon.  The testimony of each witness is summarized below:

A.  Johnny Thornton

My name is Johnny Thornton.  At the time in question, I was an inmate in the Garland County Detention Center.

In November of 2006, I was arrested at 8:00 p.m.  I did not ask for medication that evening,

but in the morning I stated I needed my medication. I was told to see the nurse. The nurse informed me, that if I wanted my medication, I needed to get the medication which had been provided to me from another period of incarceration at the Garland County Jail. I was homeless at this time and the medication was in an old car I was sleeping in and I had no way to get it brought to me.

At this same time, I was having issues with a hernia. I was sleeping on the floor as there was no bed available, and my hernia increased in size. I had headaches, was dizzy, and at times could not get up.

The medical staff kept telling me I would have to have someone deliver my medication to me. Eventually, I would ask for medications and get no response. I also started to notice that my food tray contained less than other inmates, but if I refused to give it back until my portions were increased, then I was placed in the holding cell.

I was paralyzed on the right side of my body after an incident with Officer Strickland, but I still wrote a grievance for blood pressure medication while in that condition in the holding cell. This grievance was ignored by Defendant Harmon.

On January 11, 2007, I wrote a grievance and Defendant Harmon responded partially to the grievance, but not regarding the blood pressure medication. (Def. Ex. 5). The doctor who supervised Defendant Harmon did not give me any assistance, and he told Harmon not to give any assistance, either.

On January 11, 2007 I was told the Dr. Hale said for me not to return to the hospital because I had been checked twice and had caused a scene the last time I was transported to the hospital. I did not cause any scene.

After this, I had a court appearance, and I was taken in a wheelchair. Due to the paralysis I

suffered, the chair would constantly run over my feet, and the jail staff would laugh. Captain Steed ordered that I could not go to court in that condition. It took one of the inmate trustees to lift my legs up to the foot platform of the wheelchair.

The Arkansas Department of Corrections (ADC) stated I was at stroke levels when I arrived there from Garland County. My blood pressure on arrival was 220/130. I also had a baseball sized hernia at this time. I had to use a walker as a result.

Before this incident I was in good health. However, without my medications I felt as if my head would bust. I could hardly get up, and the officers knew I couldn't easily move or get up. I was told they would come back and give me treatment, but no one ever did.

All the grievances I wrote regarding blood pressure medications appear to be lost. I have no way to prove I wrote the lost grievances. Some of the lost grievances were regarding the time I was placed in the hole.

Before I was incarcerated in November of 2006, I had previously been in the Garland County Detention Center for two weeks or so. During this earlier incarceration, my blood pressure medications were provided to me. I was also taken to the hospital twice for problems related to my hernia.

Dr. Hale determines the care provided at the county jail. As for my injuries, at times I could not see and my ears were ringing from the denial of blood pressure medications.

Additionally, after the incident with jailer Strickland, I received no treatment.

I am not the person I used to be, I have found God. Previously, I was incarcerated for breaking and entering in 2006, criminal attempt breaking and entering on September 5, 2006 - I bonded out. On September 9, 2006 I was incarcerated again for breaking and entering, and on

October 2, 2006, I bonded out. I was arrested again on November of 2006, which is the time in question. I received my medication every time except for the last one, the incarceration of November of 2006.

I have had the hernia for some time, beginning almost three years ago. Once I arrived at the ADC I did not have surgery for this condition, but I was given a jockstrap to relieve pressure.

When I was arrested on November 13, 2006, the time in question, I was in for one count of residential burglary. On September 7, 2007, I was transferred to the ADC. On February 9, 2007, I had the fight or altercation with Strickland.

During my time there, I had complaints of headaches and a hernia, and I wrote more complaints and grievances than what was in the file. Around November 30, 2006, I went to the ER in response to a complaint about my hernia, head, and hand.

I was taken to the ER immediately – within twenty-four hours of my grievance. I told Dr. Hale I needed medication. The hospital stated I refused treatment and caused a scene, but that is untrue.

I still take medication everyday. I have no records regarding the lack of medication causing me significant medical injury. I was without medication for approximately ten months.

In July of 2008 I saw Dr. Puen. I had been in the ADC for a few months, then at Sober Living in Little Rock, before returning to Hot Springs. Exhibit H was written by Dr. Puen.

B. Melvin Steed

I have been the Garland County Jail administrator for five (5) years. Exhibit 1 is a summary jail file. On November 13, 2008, Plaintiff was incarcerated for residential burglary. On September 7, 2007, he was transferred to the ADC. On June 26, 2007, Plaintiff had pled guilty to breaking and

entering and felony residential burglary, with those sentences running concurrent.

We have a nurse on staff, to whom all medical requests are referred. The nurse reviews the requests and makes a determination if a visit to the hospital is necessary, or if the inmate should be seen by a doctor.

Plaintiff was taken to St. Joseph's Hospital on November 29, 2006 with complaints regarding his hernia, head, and hand. There were no prescriptions ordered for Plaintiff after his hospital visit. He was told to rest, use ice to ease the pain, and follow up with the jail doctor.

Exhibit three is the medical complaints on file with the Jail. These include a medical complaint dated January 11, 2007 regarding a hernia; one dated February 5, 2007 regarding body aches; and one dated March 9, 2007 regarding stomach illness.

Exhibit five shows the grievances on file. On January 11, 2007, there was a grievance filed, which included complaints regarding blood pressure. There was no response regarding the blood pressure complaints. Exhibit four is the prisoner medical treatment reports for Plaintiff. Exhibit six shows the medications which were dispensed to Plaintiff.

I am not aware of Plaintiff's medications, but if he had a prescription for medication, we would see that it was filled.

### C. Tommy Harmon

I am an LPN, or Licensed Practical Nurse. My office is in the jail, and inmates were brought in to see me. I would make written reports after their visits. I would call Dr. Hale if needed, and in emergency situations or if urgent, we would send the inmates to the emergency room.

I know Plaintiff, he came in to see me several times. He stated he was taking a blood pressure prescription, but I was unable to confirm this with any of Plaintiff's doctors. Plaintiff gave me the

names of his doctors, but one was deceased and the other was retired.

I asked Plaintiff to bring me his medicine bottle. I also asked his niece to bring it to me, but she was unable to do so. I have no reason to believe his blood pressure required medication.

I checked his hernia each time he complained, and this was a continuos complaint. He also continually would complain that someone had kicked him. At one point he was released by the city police because of his hernia.

Plaintiff had one complaint in writing of needing blood pressure medications. When I checked his blood pressure, on one or two occasions, I found that his blood pressure was low. I never took a high blood pressure reading from him.

Plaintiff did have specific complaints about a cold. I treated him with Benadryll, cold tablets, and pain reliever.

March 9, 2007 is the last medical record we have on file. This is Exhibit 3, page 3. April 20, 2007 is the last grievance we have on file. I did not see Plaintiff in the summer or fall of 2007. In September, the ADC records show that Plaintiff had high blood pressure. However, there was no grievance or medical request from Plaintiff since April 20, 2007, when he filed a grievance.

**II. Discussion**

Plaintiff claims he was denied medical care when he was denied medication for high blood pressure. Defendant contends Plaintiff did not have a valid prescription for high blood pressure medication, did not complain or exhibit any signs of high blood pressure, and was not denied medical care.

To succeed on his medical claims, Plaintiff must allege and prove, by a preponderance of the evidence, a "deliberate indifference to a serious medical need." *Estelle v. Gamble,* 429 U.S. 97, 106

(1976). Prison officials may not be held liable under 42 U.S.C. § 1983 for mere negligence in the treatment of an inmate. *Id.* The standard for "deliberate indifference" includes an objective and a subjective component. *Beyerbach v. Sears,* 49 F.3d 1324, 1326 (8th Cir.1995) (citing *Farmer v. Brennan,* 511 U.S. 825, 834 (1994)). Thus, to prevail on his claims, plaintiff must show that the medical deprivation was objectively sufficiently serious and that prison officials subjectively knew about the deprivation and refused to remedy it. A serious medical need is defined as "one that has been diagnosed by a physician as requiring treatment, or one that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention." *Camberos v. Branstad,* 73 F.3d 174, 176 (8th Cir.1995) (quoting *Johnson v. Busby,* 953 F.2d 349, 351 (8th Cir.1991)).

A mere difference of opinion between plaintiff and his treating physician about what treatment is appropriate does not give rise to a colorable claim under section 1983. *Warren v. Fanning,* 950 F.2d 1370, 1373 (8th Cir. 1991), *cert. denied,* 506 U.S. 836 (1992); *Smith v. Marcantonio,* 910 F.2d 500, 502 (8th Cir. 1990); *Courtney v. Adams,* 528 F.2d 1056 (8th Cir. 1976). Likewise, disagreement with a diagnosis or course of medical treatment is insufficient to state a claim. *Davis v. Hall,* 992 F.2d 151, 153 (8th Cir. 1993).

The evidence presented at the evidentiary hearing is conclusive that Plaintiff has not carried his burden of proof that he suffered an objectively serious medical need, of which the Defendant knew and refused to remedy. The only grievance presented which refers to blood pressure medication was submitted on January 11, 2007. This grievance was responded to, although there was no response regarding blood pressure medications. The testimony presented at hearing was that Defendant had attempted to secure the prescriptions Plaintiff stated he needed, but he was unable to contact either of Plaintiff's physicians. The evidence was that these physicians were no longer practicing medicine.

Defendant testified that when he tested Plaintiff's blood pressure it was normal or low. The only indication of high blood pressure is from a record made September 7, 2007 when Plaintiff was transferred to the Arkansas Department of Corrections. (Ex. B). Plaintiff's blood pressure was high, but responded to medication when it was given. There is no record of Plaintiff having any complaints relative to blood pressure medication or high blood pressure since the grievance of January 11, 2007.

Plaintiff did receive treatment at the emergency room on November 29, 2006. (Ex. 2). This visit was in response to Plaintiff's complaint regarding his hernia, head, and hand. Plaintiff indicated at the evidentiary hearing the complaint about his "head" was in reference to symptoms he was suffering due to a lack of blood pressure medication. However, the emergency room physicians did not note any elevated blood pressure, and did not prescribe any medication. The treatment to be followed was 1-2 days of rest, with ice for pain and to follow up with the jail doctor.

Clearly, when Plaintiff was evaluated at the ADC, his blood pressure was elevated. However, there is no evidence of how long this condition had existed. Plaintiff was given medical treatment relative to his complaints, except for the January 11 grievance where there was no response regarding the blood pressure medication. The testimony at hearing was that Defendant was attempting to secure this medication for Plaintiff. Thus, there is no evidence of deliberate indifference. Once medication for blood pressure was given, Plaintiff's blood pressure dropped in response to that medication. There is no evidence Plaintiff suffered any harm due to the lack of medication for blood pressure while in the Garland County Detention Center.

**III. Conclusion**

For the reasons stated above, it is my recommendation that Plaintiff's Complaint (Doc. 1) be **DISMISSED** in its entirety.

It is also my recommendation that the Clerk of Court be directed to close *Thornton v. Sanders, et. al.*; case number 6:07-cv-6070, at the time the Plaintiff's Complaint in the above-styled case is dismissed, as the claims Plaintiff made in case number 6:07-cv-0670 have been consolidated into the above-styled case and have been heard and adjudged as if they were brought in this same action.

The parties have fourteen (14) days from receipt of this report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely objections may result in waiver of the right to appeal questions of fact. The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.

**DATED** this **13th day of January 2010.**

/s/ Barry A. Bryant
HON. BARRY A. BRYANT
UNITED STATES MAGISTRATE JUDGE